THE WESTON FIRM
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA 92109
Telephone:   858 488 1672
Facsimile:    480 247 4553
greg@westonfirm.com

BECK & LEE BUSINESS TRIAL LAWYERS
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:   305 789 0072
Facsimile:    786 664 3334
jared@beckandlee.com

<u>Counsel for Plaintiffs</u>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>     vs.<br><br>UNILEVER UNITED STATES, INC. and UNILEVER PLC,<br><br>                        Defendants. | Case No.: 2:09-cv-07855 MMM AGRx<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS ("FIRST-TO-FILE" RULE)**<br><br>Judge: The Hon. Margaret M. Morrow<br>Date: February 8, 2010<br>Time: 10:00 a.m.<br>Location: Courtroom 780 |

1

## TABLE OF CONTENTS

2    I.    Introduction.................................................................................1

3    II.   Public Policy Disfavors "Races to the Courthouse."......................1

4    III.  Defendants Fail to Cite a Single Case Where a Class Action Was Stayed
5          Because a Smaller Overlapping Class Action Was Filed Elsewhere..............3

6    IV.   The Actions Are Not "Almost Identical."........................................5

           A.   The Red and Rosen Parties Are Diverse....................................6

7          B.   Red Asserts Claims Involving More Unilever Products. ..........................7

8          C.   Red Asserts Claims Under More and Different Theories. ......................7

9    V.    The Court Is Obligated to Exercise Jurisdiction Over Claims and Parties Not
10         Represented in the Rosen Action ...................................................8

11   VI.   Defendants Should Not Be Allowed the Extreme Remedy of a Stay or
12         Dismissal After Failing to Confer With Plaintiffs' Counsel on Other Methods
           of Efficient Case Management .........................................................8

13   VII.  Conclusion ................................................................................9

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY
PROCEEDINGS ("FIRST TO FILE" RULE)

# TABLE OF AUTHORITIES

**Cases**

*Alioto v. Hoiles,* 2004 U.S. Dist. LEXIS 21398 (N.D. Cal. Oct. 12, 2004) .............4

*Alltrade, Inc., v. Uniweld Products, Inc.*, 946 F.2d 622 (9th Cir. 1991)..................4

*Church of Scientology v. U.S. Department of the Army,* 611 F.2d 738 (9th Cir. 1979)...............................................................................................................4

*Fuller v. Abercrombie & Fitch Stores, Inc.,* 370 F. Supp. 2d 686 (E.D. Tenn. 2005). ............................................................................................................5

*In Re: Aftermarket Automotive Sheet Metal Parts Antitrust Litigation,* MDL No. 2113 (J.P.M.L. 2009) .....................................................................................9

*In re Atlas Mining Co. Secs. Litig.*, 2008 U.S. Dist. LEXIS 24201 (D. Idaho Mar. 25, 2008) ...........................................................................................................2

*Inherent.com v. Martindale-Hubbell and Lexis/Nexis Inc.*, 420 F.Supp 2d 1093 (N.D. Cal. 2006)...................................................................................................4

*L. Cohen Group v. Herman Miller Inc.*, 2006 U.S. Dist. LEXIS 2301 (N.D. Cal. Jan. 18, 2006) .........................................................................................................5

*McBride v. PLM Int'l, Inc.,* 179 F.3d 737 (9th Cir. 1999).........................................2

*North Am. Cas. Ins. Co. v. Encompass Power Servs., Inc.*, 2005 WL 6453947 (E.D. Cal. Dec. 16, 2005) .............................................................................................5

*Old Country Iron Works v. Iron Workers*, 842 F. Supp. 75 (S.D.N.Y. 1993) ..........3

*Pacesetter Systems, Inc., v. Medtronic, Inc., and MED REL Inc.*, 678 F.2d 92 (9th Cir. 1982) ..........................................................................................................4

*Peak v. Green Tree Financial Servicing Corp.*, 2000 WL 943685 (N.D. Cal. 2000) ..........................................................................................................................5

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009) .........................................................................................2

*S & S Candies, Inc. v. Hershey Foods Corp.*, 2000 U.S. Dist. LEXIS 13975 (S.D.N.Y. Sept. 25, 2000) ..................................................................................3

*SKF USA Inc. v. United States,* 611 F. Supp. 2d 1351 (Ct. Int'l Trade 2009)...........3

ii

*Tringali v. Hathaway Machinery Co.*,796 F.2d 553 (1st Cir. 1986) .........................3

*VISX, Inc. v. Garabet et al.*, 2000 U.S. Dist. LEXIS 19063 (N.D. Cal. Dec. 18, 2000) .................................................................................................................5

*Walker v. Progressive Cas. Ins. Co.*, 2003 WL 21056704 (W.D. Wash. May 9, 2003) .................................................................................................................5

*Williams v. Costco Wholesale Corp.*, 471 F.3d 975 (9th Cir. 2006) ........................8

*Woodard v. Compton,* 531 F. Supp. 2d 1228 (C.D. Cal. 2007) ...............................4

*Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188 (C.D. Cal. 2006) ................4

**Statutes**

28 U.S.C. § 1331 ...................................................................................................8

28 U.S.C. § 1333(d) ..............................................................................................8

## I.      Introduction

Unilever asks the Court to take the extraordinary action of dismissing or indefinitely staying the present action, but fails to cite a single instance where a federal court stayed a class action simply because an earlier class action had been filed involving different claims and different classes. While Unilever claims staying this action will result in lower costs and judicial efficiency, the same could be said of dismissing each and every lawsuit now pending in federal court. Unilever's motivation for the pending motion is obvious: Plaintiffs here are represented by counsel present in Southern California rather than 3,000 miles away in New York, filed a much more detailed complaint, seek certification of a broader class, with a longer class period, and challenge the deceptive labels on seven of its margarine products rather than one, and even on the one overlapping product allege it is misleading in several respects rather than one.

For years Unilever defrauded millions of consumers with false health claims about trans fat, which numerous studies have shown to cause heart disease and cancer and according an 2006 estimate in the New England Journal of Medicine, results in at least 40,000 premature deaths each year in the United States. No law or public policy gives Unilever the right to select who will represent the California buyers of its products, or to dismiss entirely the claims of those outside of California, who are not included in the narrow *Rosen* class Unilever obviously prefers. In that action, distant counsel in New York waited a month to serve the complaint after filing and later granted Unilever multiple extensions to respond. By contrast, in this action counsel gave notice shortly after the complaint was served that they would be moving for class certification.

## II.     Public Policy Disfavors "Races to the Courthouse."

1

1    While Rosen may have filed his action 4 months before Red, and served the

2    complaint 3 months earlier, staying the *Red* action for this reason would be

3    contrary to public policy disfavoring "races to the courthouse" which in the context

4    of class actions Congress clearly showed its disapproval of by passing the Private

5    Securities Litigation Reform Act of 1995 ("PSLRA"), and also is evident in

6    numerous decisions by federal courts in a variety of contexts.

7    "The PSLRA was enacted to combat a race to the courthouse by plaintiffs'

8    lawyers in class action lawsuits." *In re Atlas Mining Co. Secs. Litig.*, 2008 U.S.

9    Dist. LEXIS 24201 at *15 (D. Idaho Mar. 25, 2008). The law was "designed to

10   remove advantages gained by litigants who file the first lawsuit." *Plumbers &*

11   *Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625

12   (E.D. Wis. 2009). While this is not a securities class action, Unilever nonetheless

13   asks the Court to encourage the same disfavored "race to the courthouse."

14   Comparing the *Rosen* and *Red* complaints, it is obvious counsel for Red spent a

15   greater amount of time in preparation. The *Red* complaint is 39 pages long, the

16   *Rosen* complaint 14 pages. As described in the Declaration of Gregory S. Weston,

17   Plaintiffs' counsel spent more than a year investigating and preparing their

18   complaint, including a careful review of dozens of scholarly articles. It is not, as

19   Unilever asserts, a "copycat" filing. Further, the *Red* complaint was carefully

20   prepared concurrently with a class certification motion to allow Plaintiffs to, as

21   required by C.D. Cal. L.R 23-3, file their motion for class certification within 90

22   days of the service of the complaint. Weston Decl. at ¶1.

23   It is not only in securities litigation races to the courthouse are disfavored.

24   For example, in *McBride v. PLM Int'l, Inc.*, the court favored a broader

25   interpretation of ERISA standing because to do so otherwise "would create a race

26   to the courthouse." 179 F.3d 737, 743 (9th Cir. 1999).

27

2

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY
PROCEEDINGS ("FIRST TO FILE" RULE)

1   In *SKF USA Inc. v. United States*, one aspect of the Department of
2   Commerce's policy implementation of the antidumping statute was found unlawful
3   in part because it "induces an absurd, and unnecessary, race to the courthouse[.]"
4   611 F. Supp. 2d 1351, 1365 (Ct. Int'l Trade 2009).

5   In *S & S Candies, Inc. v. Hershey Foods Corp.*, the court dismissed the first-
6   filed of two duplicative suits, in order to not "condone S&S's race to the
7   courthouse." 2000 U.S. Dist. LEXIS 13975 at *5 (S.D.N.Y. Sept. 25, 2000).

8   In removing a labor action that omitted to plead necessary federal questions,
9   the court in *Old Country Iron Works v. Iron Workers* reasoned that if it ruled
10   otherwise "races to the courthouse would be encouraged." 842 F. Supp. 75, 77
11   (S.D.N.Y. 1993).

12   In *Tringali v. Hathaway Machinery Co*. the court ruled that the proceeds of a
13   bankrupt debtor's insurance policies were part of its estate and there is "judicial
14   unanimity" on this point because "[a]ny contrary holding could start a race to the
15   courthouse whenever a policy is too small to satisfy several potential plaintiffs."
16   796 F.2d 553, 560 (1st Cir. 1986).

17   **III.   Defendants Fail to Cite a Single Case Where a Class Action Was Stayed**
18   **Because a Smaller Overlapping Class Action Was Filed Elsewhere.**

19   While Unilever cites 13 cases in its request that the Court "decline
20   jurisdiction," only three of these involve class actions. In two of these cases the
21   proposed classes were identical, and in the third the dismissed proposed class was
22   entirely subsumed by a certified nationwide class. The other cases Unilever relies
23   on are even more inapposite, generally involving parties suing each other in
24   different forums over the same patent, contract, or business dispute.

25   In the first case, *Pacesetter Systems, Inc., v. Medtronic, Inc.*, two actions
26   involving the same parties were brought contesting the validity of the same patent,

27

3

1  one suit for infringement, the other for declaratory relief that no patent had been

2  infringed. 678 F.2d 92 (9th Cir. 1982). The second, *Inherent.com v. Martindale-*

3  *Hubbell*, involved an alleged breach of a corporate acquisition contract and a

4  mirror-image declaratory relief claim brought by the defendants in the first action.

5  420 F.Supp 2d 1093 (N.D. Cal. 2006). The third, *Woodard v. Compton*, was

6  brought before this Court by a litigious pro se prison plaintiff whose third habeas

7  petition overlapped his second. 531 F. Supp. 2d 1228 (C.D. Cal. 2007).

8      *Xoxide, Inc. v. Ford Motor Co.*, like *Pacesetter* and *Inherent.com*, involved a

9  business dispute that led to filing of an anticipatory action by the party who

10  expected to be sued elsewhere. 448 F. Supp. 2d 1188 (C.D. Cal. 2006). *Alltrade,*

11  *Inc., v. Uniweld Products, Inc*. involved two actions over the same trademark, one

12  for infringement and one for declaratory relief. 946 F.2d 622 (9th Cir. 1991). In

13  *Church of Scientology v. U.S. Department of the Army,* the plaintiff sought

14  documents from the Army under the Freedom of Information Act that were already

15  the subject of another suit by the same plaintiff in another district. 611 F.2d 738

16  (9th Cir. 1979). Further, in *Scientology* "the later-filed suit ha[d] progressed

17  further" and thus efficiency considerations "disfavor[ed] the first-to-file rule."

18  *Scientology,* 611 F.2d at 750.

19      *Alioto v. Hoiles* was a dispute over an attorney fee agreement, the first case

20  filed by the client, the second by the attorney. 2004 U.S. Dist. LEXIS 21398 (N.D.

21  Cal. Oct. 12, 2004). While Unilever cites this case for the proposition that "Exact

22  parallelism between the two actions need not exist, it is enough if the parties and

23  issues in the two actions are 'substantially similar,'" the court there noted "the

24  issues in the present complaint and the Colorado counterclaim are ***identical*** …

25  Both cases seek a determination whether … defendants are required to pay

26  attorney's fees to Alioto, and if so, how much." *Id*. at *14-15 (emphasis added).

27

*VISX, Inc. v. Garabet et al.* involved multiple actions that were "practically identical" over the same patents. 2000 U.S. Dist. LEXIS 19063 at *6 (N.D. Cal. Dec. 18, 2000). *L. Cohen Group v. Herman Miller Inc.* involved a furniture manufacturer and retailer suing one another, one action for patent and trademark infringement and the other for declaratory relief. 2006 U.S. Dist. LEXIS 2301 (N.D. Cal. Jan. 18, 2006). *North Am. Cas. Ins. Co. v. Encompass Power Servs, Inc.*, involved parties suing each other in different forums over who would bear the cost of a fire at an oil refinery. 2005 WL 6453947 (E.D. Cal. Dec. 16, 2005).

Unilever only manages to cite three "first to file rule" cases involving class actions. In *Fuller v. Abercrombie & Fitch Stores, Inc.*, the time between the filing of the cases was 18 months, and the two actions involved "the ***same*** collective classes" (emphasis added). 370 F. Supp. 2d 686, 689 (E.D. Tenn. 2005). Only after concluding "that a resolution in the [first] action leaves little to be decided in" the second action did the Court *transfer*, not dismiss or stay, the second action. *Id.* at 690. As described below, this cannot be said of the two actions here. Likewise in *Peak v. Green Tree Fin. Servicing Corp.*, the two actions involved classes that were "identically defined" and where the "alleged offending behavior … is the same in both cases." 2000 WL 973685 at *2 (N.D. Cal. July 7, 2000). The third class action cited also bears little similarity to the present cases. In *Walker v. Progressive Cas. Ins. Co.,* No. C03-656R, 2003 WL 21056704 (W.D. Wash. May 9, 2003), the first-filed action involved an nationwide opt-in class. After the first nationwide action had already been certified, two individuals who had opted into the class brought a second Washington-only class involving the same behavior by the same defendants whose proposed members all had the opportunity to opt into the first action.

**IV.    The Actions Are Not "Almost Identical."**

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY
PROCEEDINGS ("FIRST TO FILE" RULE)

Defendants' assertions that the *Red* and *Rosen* actions are "almost identical" is wrong. First, the proposed classes are not the same. Second, the defendants are not the same. Third, the *Red* complaint is more expansive, involving more claims, more products, and more theories of relief. Fourth, the *Red* complaint is far more detailed and specific. Fifth, the *Red* class period is longer.

**A. The Red and Rosen Parties Are Diverse.**

The Red action was brought against both Unilever United States Inc. and its corporate parent, Unilever PLC on behalf of a much larger class consisting of:

> All persons (excluding officers, directors, and employees of Unilever) who purchased, on or after January 1, 2000, one or more Unilever margarine products containing artificial trans fat for their own use rather than resale or distribution.

The *Rosen* action was brought only against Unilever United States on behalf of a much smaller class of:

> all Californians who purchased I Can't Believe It's Not Butter during the Class Period" defined as June 2004 to the present.

Thus, the *Rosen* action does not purport to seek any relief on behalf of:

1. the purchaser of any Unilever margarine other than I Can't Believe It's Not Butter!;
2. I Can't Believe It's Not Butter! purchasers from outside California; or
3. I Can't Believe It's Not Butter! purchasers from January 2000 to June 2004.

Conversely, excluded from the *Red* class but included in *Rosen* are:

1. purchasers of I Can't Believe It's Not Butter products that do not contain artificial trans fat, e.g., the recently reformulated version of the product; or
2. purchasers of I Can't Believe It's Not Butter whose purchase was for any reason other than "their own use rather than resale or distribution," e.g., grocery store chains and wholesale food distributors.

6

**B.  Red Asserts Claims Involving More Unilever Products.**

     *Rosen* seeks relief on behalf of the purchasers of only "I Can't Believe It's Not Butter!" without further specificity. Most likely the intention was to include only purchasers of the original plastic tub version of the product, especially given that this is the only product pictured on the *Rosen* complaint. Red names 7 different margarine products, including three variants of "I Can't Believe It's Not Butter!".

     Given that Red seeks certification of claims involving more time, more people, and more products, it is not surprising that Unilever wishes only to stay the *Red* action in favor of the much smaller *Rosen* action.

**C.  Red Asserts Claims Under More and Different Theories.**

     Rosen seeks relief under three California statutes, namely the UCL, FAL, and CLRA. Red, however, also seeks relief under the Lanham Act. Thus in seeking dismissal of the present action, Unilever asks the Court to ignore the federal question jurisdiction Congress assigned it under the Lanham Act, or alternatively to put these claims on ice for an indefinite period that could be years, especially given the pace of *Rosen* has thus far proceeded.

     Another key distinction between the actions are their scope. Rosen identifies only one specific statement on one product as misleading, namely the "made from a blend of nutritious oils" claim on the package of I Can't Believe It's Not Butter, which contains partially hydrogenated vegetable oil. By contrast, on this particular product, Red includes this same claim, but also claims about the product's trans fat content, cholesterol content, the misleading comparison table between the product and butter, and good health properties misleadingly implied by the image of a red heart and phrase "For Information on Healthy Diets." Even if, for example, Unilever is successfully able to convince Judge Ware in *Rosen* that calling partially

7

hydrogenated vegetable oil "nutritious" is non-actionable puffery, it will do nothing to dispose of Plaintiffs' claim that labeling products containing trans fat "no trans fat" is deceptive, nor will it resolve Plaintiffs' claim that comparing the fat and calorie content of margarine diluted with water to undiluted butter is misleading.

**V.      The Court Is Obligated to Exercise Jurisdiction Over Claims and Parties Not Represented in the Rosen Action**

When a district court "is presented with a case within its original jurisdiction, it has a virtually unflagging obligation to exercise the jurisdiction conferred upon it by the coordinate branches of government and duly invoked by litigants." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006). Here, the Class Action Fairness Act, 28 U.S.C. § 1333(d), confers upon the Court original jurisdiction over the entire action in addition to its original federal question jurisdiction over the Lanham Act claim under 28 U.S.C. § 1331.

**VI.     Defendants Should Not Be Allowed the Extreme Remedy of a Stay or Dismissal After Failing to Confer With Plaintiffs' Counsel on Other Methods of Efficient Case Management**

There are several remedies short of dismissal or indefinite stay to prevent waste of resources and duplication, none of which require the Court to abdicate its "virtually unflagging obligation to exercise" its original jurisdiction over the present claims. Defendants failed to make any effort to confer with Plaintiffs' counsel on case management issues before filing this motion.

Indeed, had defendants used the typical procedure employed by companies facing multiple class actions and filed a motion for transfer and consolidation with Judicial Panel on Multidistrict Litigation, the likely result is that the JPML would have denied the motion and instead simply suggested the parties coordinate discovery and pretrial motions to avoid duplication. *See* Order Denying Transfer,

8

1 | *In Re: Aftermarket Automotive Sheet Metal Parts Antitrust Litigation,* MDL No.
2 | 2113 (J.P.M.L. 2009) (attached to the Declaration of Gregory S. Weston as Ex.
3 | A.). In *Aftermarket Parts* the Panel, faced with one case in this District and another
4 | in the Eastern District of Wisconsin, concluded:

> Given the limited number of districts and parties involved in this litigation, cooperation among the counsel can minimize whatever possibilities there are of duplicative discovery and/or inconsistent pretrial rulings.

Plaintiffs are ready and willing to cooperate with Unilever to "minimize whatever possibilities there are of duplicative discovery and/or inconsistent pretrial rulings."

**VII.   Conclusion**

For all of the foregoing reasons, Unilever United States, Inc.'s Motion to Dismiss or Stay the Proceedings ("First to File Rule") should be denied.

Dated: January 8, 2010                    Respectfully Submitted,

s/Gregory S. Weston
THE WESTON FIRM
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA 92109
Telephone:  858 488 1672
Facsimile:   480 247 4553
greg@westonfirm.com

BECK & LEE BUSINESS TRIAL LAWYERS
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:  305 789 0072

9

1
2

Facsimile:    786 664 3334
jared@beckandlee.com

3

Counsel for Plaintiffs

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

10