THE WESTON FIRM
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA 92109
Telephone:   858 488 1672
Facsimile:    480 247 4553
greg@westonfirm.com

BECK & LEE BUSINESS TRIAL LAWYERS
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:   305 789 0072
Facsimile:    786 664 3334
jared@beckandlee.com

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, and RACHEL WHITT, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> UNILEVER PLC and UNILEVER UNITED STATES, INC., <br><br> Defendants. | Case No.: 2:09-cv-07855 MMM AGRx <br><br> **PLAINTIFFS' OPPOSITION TO UNILEVER UNITED STATES INC.'S MOTION TO DISMISS** <br><br> Judge: The Hon. Margaret M. Morrow <br> Date: February 8, 2010 <br> Time: 10:00 a.m. <br> Courtroom: 780 |

# TABLE OF CONTENTS

I.    Introduction.................................................................................................. 1

II.   Legal Standard ............................................................................................. 1

III.  Plaintiffs' Trans Fat-Related Claims Are Not Preempted.................................2

  A.  Interpretations of the Federal Food, Drug, and Cosmetic Act are Informed by a Strong Presumption *Against* Preemption................................2

  B.  Plaintiffs' Claims Related to False Representations of Trans Fat on Margarine Labeling Cannot be Preempted Based Solely on What the FDA Requires to be Stated in the "Nutrition Facts" Box; The FDA's Regulations, In Fact, Permit the Type of Claims Pled by Plaintiffs. ...........4

  C.  *Fraker* Is Inapposite.......................................................................................7

IV.   There Is No Basis to Abstain in Deference to the FDA ...................................8

V.    *Cel-Tech* Does Not Apply To Plaintiffs' Claims. ...........................................9

VI.   Unilever's "Truth" and "Puffery" Defenses Fail..........................................11

  A.  Arguments Allegedly False Statements Are True Are Inappropriate on a Motion to Dismiss. ..................................................................................11

  B.  "True But Misleading" Statements are Actionable Under the UCL, FAL, CLRA, and Lanham Act...............................................................................11

  C.  Unilever's Puffery Defense Fails Because the Defense Does Not Apply to Specific Factual Claims. ............................................................................12

    1.  Unilever's "Nutritious Oils" Claims Cannot Be Defended As Puffery.12

    2.  Unilever's Comparisons To Butter Are Not Puffery. ...........................14

    3.  21 C.F.R. § 101.13(J) Does Not Shield Unilever From Liability For Their Misleading Comparisons to Butter. ............................................15

VII.  Plaintiffs' Claims Grounded in Fraud Satisfy Rule 9(b)'s Pleading Standard. 15

  A.  Plaintiffs Are Not Required to Plead Reliance..........................................15

  B.  Plaintiffs Adequately Describe Unilever's Deceptive Claims....................16

  C.  Plaintiffs Adequately State Claims for Fraudulent Omissions..................16

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VIII.  Plaintiffs Are Entitled to Injunctive Relief....................................................17

    A.   Unilever Inappropriately Introduces Evidence Outside the Scope of the Complaint. ................................................................................................17

    B.   Even If the Court Were to Accept Unilever's Argument, the Statements Made in the Press Release Have Not Yet Occurred, and Further Only Apply to Unilever's "Soft Spreads Portfolio." ...........................................18

IX.  Plaintiffs Do Not Have a "CLRA Damages Claim" For the Court to Strike...18

X.   Conclusion ....................................................................................................19

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alfaro v. Cmty. Hous. Improvement Sys.*, 171 Cal App. 4th 1356 (2009) .............. 16

4

*Altria v. Good*, 129 S. Ct. 538 (2008) .................... 2

5

*Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............... 16

6

*Caro v. Procter & Gamble,* 18 Cal. App. 4th 644 (1993)....................................... 17

7

*Cel-Tech Communications, Inc. v. L. A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) . 9

8

*Coastal Abstract Service v. First Am. Title Ins. Co.,* 173 F.3d 725 (9th Cir. 1999) 12

9

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Service,* 911 F.2d 242 (9th Cir.

10

   1990)................................................................................................................. 12

11

*Farm Raised Salmon Cases*, 42 Cal. 4th 1077; 175 P.3d 1170 (2008)............. 2, 7, 8

12

*Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ............ 7, 8, 12

13

*Gonero v. Union Pac. R.R. Co.,* 2009 U.S. Dist. LEXIS 100962 (E.D. Cal. Oct. 16,

14

   2009).................................................................................................................. 11

15

*Hitt v. Arizona Beverage Co.*, Case No. 08-cv-809-WQH(POR), 2009 WL 449190

16

   (S.D. Cal. Feb. 4, 2009) ................................................................................... 5, 8

17

*In re Paxil Litigation*, 218 F.R.D. 242 (C.D. Cal. 2003)........................................ 9

18

*Jackson v. Balanced Health Prods., Inc.*, 2009 WL 1625944 (N.D. Cal. June 10,

   2009)................................................................................................................. 7, 8

19

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).............................. 15, 16

20

*Levine v. Diamanthuset, Inc.*, 950 F.2d 1478 (9th Cir. 1991) ................................. 2

21

*Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009) 4, 5, 8, 9

22

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .......................................................... 2

23

*Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943 (9th Cir. 2009) ...................... 2

24

*Morgan v. AT&T Wireless Services, Inc.,* 177 Cal. App. 4th 1235 (2009)............. 11

25

*N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 509 F. Supp. 2d 351

26

   (S.D.N.Y. 2007) ................................................................................................... 6

27

28

*N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 556 F.3d 114 (2d Cir. 2009)................................................................................................................6

*Newcal Indus. v. Ikon Office Solutions,* 513 F.3d 1038 (9th Cir. 2008) ................12

*Parrino v. FHP, Inc.*,146 F.3d 699 (9th Cir. 1998)................................................17

*People v. Orange Co. Charitable Services*, 73 Cal. App. 4th 1054 (1999) ...........16

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998).........................15

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009) ...................1

*Smith v. State Farm Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001) ..............10

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (9th Cir. 1997)........12, 14

*Thomas v. Hickman*, 2007 U.S. Dist. LEXIS 9485 (E.D. Cal. Feb. 8, 2007) ...........2

*Tylka v. Gerber Prods. Co.*, 1999 U.S. Dist. LEXIS 10718 (N.D. Ill. June 29, 1999)................................................................................................................13

*TYR Sport Inc. v. Warnaco Swimwear, Inc.,* 2009 U.S. Dist. LEXIS 66118 (C.D. Cal. May 27, 2009) ......................................................................................14

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) .................................1

*Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952 (C.D. Cal. 2001) .......2

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .........................13, 14

*Wright v. General Mills*, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)............8, 18

*Wyeth v. Levine*, 129 S. Ct. 1187 (2009) .................................................................2

*Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir. 1990)....................................................2

**Statutes, Regulations, and Rules**

21 C.F.R. § 101.13(c) .......................................................................................6

21 C.F.R. § 101.13(i) .......................................................................................6

21 C.F.R. § 101.13(i)(3) ...................................................................................6

21 C.F.R. § 101.13(j) .....................................................................................15

21 C.F.R. § 101.13(j)(ii)(B) ...........................................................................15

21 C.F.R. § 101.9(c)(2)(ii) ......................................................................3, 5, 6


21 U.S.C. § 337 ................................................................................................7

21 U.S.C. § 343(q) ...........................................................................................3

21 U.S.C. § 343(r) ............................................................................................3

21 U.S.C. § 343(r)(1) .......................................................................................3

21 U.S.C. § 343-1 ............................................................................................8

21 U.S.C. § 343-1(a)(3) ...................................................................................3

21 U.S.C. § 378 ................................................................................................7


Bus. & Prof. Code § 17500 ...........................................................................11


Civ. Code 1780(a)(1) .....................................................................................19

Civ. Code 1780(a)(4) .....................................................................................19

Civ. Code 1782(a) ..........................................................................................19

Civ. Code 1782(d) ..........................................................................................19


Fed. R. Civ. Proc. 12 .......................................................................................1

Fed. R. Civ. Proc. 9 .......................................................................................15

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO UNILEVER UNITED STATES INC.'S
MOTION TO DISMISS

## I.    Introduction

Plaintiffs are consumers challenging Unilever's deceptive labeling of its margarine products, which contain artificial trans fat, a food additive that is so toxic that it has been banned in several countries and U.S. cities. Their claims are pled as violations of the Lanham Act, the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), the Consumer Legal Remedies Act ("CLRA") and California's common law of unfair competition, though Unilever does not challenge or even mention this last claim.

Unilever has moved to dismiss under Federal Rule of Procedure 12(b)(6).  In arguing for dismissal, Unilever contends that the state-law claims are preempted by the Nutrition Labeling and Education Act of 1990, that the Court should abstain from deciding this case in deference to the Food and Drug Administration, and that the alleged misrepresentations are either true on their face or harmless "puffery." None of these arguments withstand minimal scrutiny, as discussed below. Unilever's Motion to Dismiss should be denied.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). On a motion to dismiss courts must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009). In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court emphasized that construction of the pleading in the plaintiff's favor is applicable to facts (rather than legal conclusions): "When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Iqbal*, 129 S. Ct. at 1950. Courts must further draw "all reasonable inferences from the complaint in [Plaintiffs'] favor." *Mohamed v.*

1

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO UNILEVER UNITED STATES INC.'S
MOTION TO DISMISS

1   *Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). Extraneous material

2   may not be used in testing a complaint's legal adequacy. *See Levine v.*

3   *Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991). Additionally,

4   "defendants have the burden on a motion to dismiss to establish the legal

5   insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.

6   1990); see also *Thomas v. Hickman*, 2007 U.S. Dist. LEXIS 9485 at *25 (E.D. Cal.

7   Feb. 8, 2007) ("It is the burden of the party bringing a motion to dismiss...");

8   *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 955 (C.D. Cal. 2001)

9   (same).

10  **III.    Plaintiffs' Trans Fat-Related Claims Are Not Preempted.**

11          **A.    Interpretations of the Federal Food, Drug, And Cosmetic Act are**
            **Informed by a Strong Presumption *Against* Preemption.**

12

13      The United States Supreme Court has identified two "cornerstones" of its

14  pre-emption jurisprudence.

15          First, the purpose of Congress is the ultimate touchstone in every pre-

16          emption case. . . . Second, in all pre-emption cases, and particularly in

17          those in which Congress has legislated in a field which the States have

18          traditionally occupied, we start with the assumption that the historic

19          police powers of the States were not to be superseded by the Federal

20          Act unless that was the clear and manifest purpose of Congress.

21  *Wyeth v. Levine*, 129 S. Ct. 1187, 1194-95 (2009) (internal citations omitted). The

22  assumption against pre-emption exists because "respect for the States as

23  "independent sovereigns in our federal system" leads to the assumption that

24  "Congress does not cavalierly pre-empt state-law causes of action." *Id.* at 1195 n.3

25  (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). And the assumption

26  "applies with particular force when Congress has legislated in a field traditionally

27  occupied by the States." *Altria v. Good*, 129 S. Ct. 538, 543 (2008). *See also Farm*

28

2

1    *Raised Salmon Cases*, 42 Cal. 4th 1077, 1087-88; 175 P.3d 1170, 1176 (2008)

2    (interpretation of the Federal Food, Drug, and Cosmetic Act is "informed by a

3    strong presumption against preemption").

4          In this case, Unilever argues that language in the Federal Food, Drug, and

5    Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act

6    of 1990 ("NLEA"), preempts Plaintiffs' claims that Unilever made misleading

7    representations about the amount of trans fat in its margarines. The language in

8    question appears in 21 U.S.C. § 343-1(a)(3), and provides that no state may

9    "directly or indirectly establish . . . any requirement for the language for the

10   labeling of food that is not identical to the requirement of section 403(q) [21

11   U.S.C. § 343(q) of the NLEA]."[1] According to Unilever, section 343-1(a)(3)

12   precludes Plaintiffs from lodging state-law claims premised on the false

13   advertising of trans fat levels, because the Food and Drug Administration ("FDA")

14   has promulgated a regulation concerning how manufacturers are to disclose trans

15   fat amounts in the "Nutrition Facts" box which, by law, must be printed on their

16   products. In pertinent part, the regulation states that in the "Nutrition Facts" box,

17

18   ---

      [1]       Unilever conflates the issues by quoting only the preemption language in
19   section 343-1(a)(3), which applies solely to the disclosure requirements for the
      mandatory "Nutrition Facts" box. As discussed below, Plaintiffs' claims are not
20   based on what Unilever has or has not set forth in the "Nutrition Facts" box; rather,
      they are based on misleading "no trans fat" and "0g trans fat" claims made on the
21   front of the packages, which, in turn, are voluntary nutrition content claims under
      21 U.S.C. § 343(r)(1). Accordingly, any analysis of preemption must travel under
22   the preemption language in 21 U.S.C. § 343-1(a)(5). For discussions on the
      distinction between the disclosures mandatory under 21 U.S.C. § 343(q) and
23   voluntary nutrition claims under 21 U.S.C. § 343(r), see generally *N.Y. State*
24   *Restaurant Ass'n v. N.Y. City Board of Health*, 556 F.3d 126 (2d Cir. 2009); *N.Y.*
      *State Restaurant Ass'n v. N.Y. City Board of Health*, 509 F. Supp. 2d 351, 361
25   (S.D.N.Y. 2007); *N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 2008
26   WL 1752455 (S.D.N.Y. Apr. 16, 2008).

27                                           3

28   ---
     *Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
     PLAINTIFFS' OPPOSITION TO UNILEVER UNITED STATES INC.'S
     MOTION TO DISMISS

"If the serving contains less than 0.5 gram, the content [of trans fat], when declared, shall be expressed as zero." 21 C.F.R. § 101.9(c)(2)(ii).

> **B.     Plaintiffs' Claims Related to False Representations of Trans Fat on Margarine Labeling Cannot be Preempted Based Solely on What the FDA Requires to be Stated in the "Nutrition Facts" Box; The FDA's Regulations, In Fact, Permit the Type of Claims Pled by Plaintiffs.**

Unilever's entire preemption argument depends on making an unwarranted logical leap from what the FDA requires to be set forth in the "Nutrition Facts" box, despite the fact that none of Plaintiffs' claims concern the "Nutrition Facts" box or its requirements. From the required "Nutrition Facts" box disclosure, Unilever concludes that all of Plaintiffs' claims relating to the misleading representation of trans fat levels – and, in particular, Unilever's false statements that its margarines contain "no trans fat" or "0g trans fat" – are preempted, because the regulation states that amounts of trans fat less than 0.5 gram per serving "shall be expressed as zero" in the "Nutrition Facts" box. The argument lacks legal precedent, impermissibly expands the scope of the "Nutrition Facts" box regulation, ignores the FDA regulation which actually does apply to statements of nutrition level made outside of the "Nutrition Facts" box, and crumbles in the face of the strong presumption against preemption, properly applied.

In *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009), Judge Breyer held that the same provision of the NLEA could not preempt, either expressly or impliedly, UCL claims against a food producer for falsely advertising its pasta sauce as "all natural" when it contained high fructose corn syrup. In rejecting the defendant's preemption arguments, the court observed that the NLEA amended the FDCA "to include an express preemption provision that *allows* state regulations that are identical to federal law." *Id.* at 1032 (emphasis in original). The court held that because the plaintiffs did not allege state-law claims

4

1  seeking to impose requirements for the three food labeling areas triggering the

2  specific NLEA preemption provision at issue in *Lockwood* (artificial flavors,

3  colors, and preservatives), the claims could not be expressly preempted. *See id.* at

4  1031.

5        Here, Unilever acknowledges that there is no implied preemption of

6  Plaintiffs' claims. Def's Memo at 6. Instead, Unilever crafts an express preemption

7  argument, pointing to the "Nutrition Facts" box regulation on trans fat levels, and

8  contending that Plaintiffs' claims would seek to impose requirements on Unilever

9  which are "not identical" to those found in 21 C.F.R. §101.9(c)(2)(ii).

10       If the Complaint alleged that the "Nutrition Facts" boxes on Unilever's

11 margarine products were actionable misrepresentations, then Unilever's argument

12 would have merit. But this is not the case. Rather, and as a basis for each of their

13 state-law claims, Plaintiffs allege that the products' ***labeling*** – not the "Nutrition

14 Facts" box – misrepresents the content of trans fat using the phrases "0g trans fat"

15 and "no trans fat," and misrepresents the harmfulness of the trans fat content by

16 omitting its true amount in making misleading comparisons to butter. *See* Compl.

17 ¶¶ 62, 65, 69, 72, 76, 78, 82, 83, 87, 90, 91, 95. Meanwhile, 21 C.F.R. §

18 101.9(c)(2)(ii) strictly concerns the designation of trans fat amounts in the

19 "Nutrition Facts" box, and has nothing to say about advertising or representing the

20 level of trans fat on the other portions of the product's packaging or labeling.

21 Accordingly, the regulation simply cannot preempt Plaintiffs' state-law claims

22 because – like the claims in *Lockwood* – they are not premised on an area expressly

23 covered by federal law. *See Lockwood*, 597 F. Supp. at 1032; *see also Hitt v.*

24 *Arizona Beverage Co.*, 2009 WL 449190 at *12 (S.D. Cal. Feb. 4, 2009) (rejecting

25 defendant's express preemption argument in class action alleging false labeling of

26 drink products as "100% Natural," "All Natural," and "Natural" where defendant

27

28

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO UNILEVER UNITED STATES INC.'S
MOTION TO DISMISS

failed to "reference any express preemption provision [in the NLEA] that applies to Plaintiff's claims").

In fact, the only regulation addressing explicit representations of nutrient levels in product labeling outside the "Nutrition Facts" box is found in 21 C.F.R. § 101.13(i), which Unilever cites without discussion.[2] Def's Memo at 7. ***This*** regulatory provision, in contrast to the "Nutrition Facts" box requirements set forth under 21 C.F.R. § 101.9(c)(2)(ii), is completely silent on whether amounts of trans fat under 0.5 grams per serving may be represented as zero. Instead, section 101.13(i)(3) provides that statements about the amount or percentage of a nutrient may not be "false or misleading ***in any respect*** . . . ." 21 C.F.R. § 101.13(i)(3) (emphasis added). As such, instead of preempting, the regulations expressly authorize just the type of legal claims asserted by Plaintiffs in this action – namely,

---

[2]    At 21 C.F.R. § 101.13(c), the regulations provide that, "Information that is required or permitted by § 101.9 . . . to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section. ***If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims***." (emphasis added). The FDA regulations draw a sharp distinction between the information set forth in the "Nutrition Facts" box (pursuant to § 101.9) and the information outside the box, and subject the two categories to differing disclosure standards. *See N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 556 F.3d 114, 126 (2d Cir. 2009) (observing that 21 C.F.R. 101.13(c) "reflects the FDA's view that a quantitative statement as to a nutrient amount, 100 calories, for example, is not a [nutrient content] claim when such a statement appears in the nutrient panel . . ., *but* is one when it does not." (emphasis in original)); *see also N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 509 F. Supp. 2d 351, 361 (S.D.N.Y. 2007) ("it is clear that under the federal statutory scheme, the mandatory statement of nutrient amount in the familiar Nutrition Facts panel is not a 'claim,' while an identical statement voluntarily made elsewhere on a food product label is a 'claim' subject to § 343(r), the attendant FDA regulations ....").

6

1    that the labels of Unilever's margarine products state the amount of trans fat in a

2    false and misleading manner.

3

4        **C.    *Fraker* Is Inapposite.**

5        The lone authority relied upon by Unilever for its preemption argument, an

6    unpublished decision from the Southern District of California, is inapposite.  In

7    *Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007), the plaintiff

8    alleged that KFC made misleading representations about the quality of its food

9    while its products were high in trans fat, and misbranded and made actionable

10   health claims about the food in violation of regulations promulgated under the

11   FDCA. In addition to various state-law claims, the plaintiff brought a false

12   advertising claim directly under the FDCA, 21 U.S.C. § 378. After dismissing the

13   complaint to the extent it was based on statements constituting "non-actionable

14   puffery,"[3] the court found that the plaintiff's remaining claims were ***impliedly***

15   preempted, owing to the fact that only the U.S. government may bring an FDCA

16   claim pursuant to 21 U.S.C. § 337. *See Fraker*, 2007 WL 129571 at *3-*4; *see also*

17   *Farm Raised Salmon*, 175 P.3d at 1097 (asking the court to directly apply the

18   FDCA would run afoul of 21 U.S.C. § 337; accordingly, the plaintiff's claims in

19   *Fraker* were preempted by section 337); *Jackson v. Balanced Health Prods., Inc.*,

20   2009 WL 1625944 at *3 (N.D. Cal. June 10, 2009) (distinguishing *Fraker* within

21   preemption analysis and finding no preemption because "in the present case,

22   Plaintiffs have not brought claims directly under the FDCA").

23

24   [3]      None of the alleged misrepresentations in *Fraker* concerned trans fat.
25   Unilever inaccurately states that, "*Fraker* involved TFA-based claims against
     Kentucky Fried Chicken that mirror Plaintiffs' claims in this case," and that,
26   "Plaintiffs' TFA claims in this case are indistinguishable from the TFA claims
27   alleged in *Fraker*."  Def's Memo at 7.

28

1    Here, Plaintiffs have not brought an FDCA claim. They have asserted claims

2    only under the Lanham Act and California law. Unilever, moreover, has conceded

3    that the FDCA cannot impliedly preempt the types of state-law claims that

4    Plaintiffs have asserted. *See* Def's Memo at 6 ("This is not a case of 'implied'

5    preemption."). Accordingly, *Fraker* bears no relevance here.[4]

6    **IV.    There Is No Basis to Abstain in Deference to the FDA**

7    In the alternative to express preemption, Unilever urges the Court to abstain

8    from deciding Plaintiffs' claims, "in deference to the FDA." Def's Memo at 8.

9    Citing the FDA's "oversight" and "day-to-day supervision responsibilities," this

10   argument is really a thinly disguised plea for implied preemption (*i.e.*, through the

11   doctrines of "field preemption" or "conflict preemption"), which Unilever has

12   already conceded cannot apply to Plaintiffs' claims. And to be sure, courts have

13   roundly rejected the view that states are impliedly preempted by extensive federal

14   legislation and regulation in the area of food labeling. *See Lockwood*, 597 F. Supp.

15   2d at 1031-34; *Hitt*, 2009 WL 449190 at *4-*5; *Jackson*, 2009 WL 1625944 at *2-

16   *4; *Farm Raised Salmon*, 175 P.3d at 1181-84; *Wright v. Gen. Mills, Inc.*, 2009

17   WL 3247148 at *2-*3 (S.D. Cal. Sept. 30, 2009).

18   In conducting their preemption analyses, each of these courts has recognized

19   that the FDCA, as amended by the NLEA, explicitly authorizes state regulation of

20   food labeling. On its face, the statute establishes a federal regulatory system to

21   exist alongside state law. *See* 21 U.S.C. § 343-1. Unilever's proposal to eviscerate

22   the role of state law by requiring judicial abstention from deciding state-law

23   claims, simply because of their inappropriate factual assertion there is currently an

24

25   ---

     [4]    Also, in deciding *Lockwood*, Judge Breyer declined to follow *Fraker*, noting

26   that *Fraker* failed to discuss the preemption provisions added by the NLEA to the

27   FDCA in considering the preemption issue. *See Lockwood*, 597 F. Supp. 2d at
     1034.

28

8

FDA investigation and evaluation of trans fat is "ongoing" and raises "complexities," is not within this Court's power in view of the FDCA's plain language.

Indeed, the conduct of which Plaintiffs complain – false and misleading advertising – is a typical and proper object of regulation for the statutory claims pled by Plaintiffs. Thus, in rejecting a similar argument to stay, out of deference to the FDA, class claims for false and misleading advertising against a pasta manufacturer, Judge Breyer noted that "every day courts decide whether conduct is misleading" and further noted that formal rulemaking by the FDA would not resolve the issues raised by the plaintiffs' claims under California law. *See Lockwood*, 597 F. Supp. 2d at 1035. The reasoning applies with equal force here.[5] *See also Wright*, 2009 WL 3247148 at *3-*4 (rejecting food manufacturer's argument to stay, in deference to the FDA, class action alleging false labeling of granola bars as "100% Natural").

For all of the foregoing reasons, this Court should also decline to stay or abstain from ruling on Plaintiffs' claims.

## V.   *Cel-Tech* Does Not Apply To Plaintiffs' Claims.

Unilever points to *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999) as precluding Plaintiffs' claims because "A court should not make illegal that which the legislature or a regulatory agency has expressly allowed." Def's Memo at 10. But the holding of *Cel-Tech* is

---

[5]   None of the cases cited by Unilever even remotely support the proposition that a court should abstain from deciding false advertising claims because an object of potential FDA regulation is involved. Moreover, Unilever completely twists a quotation from *In re Paxil Litigation*, 218 F.R.D. 242, 248 (C.D. Cal. 2003), which involved a class certification analysis taking issue with the representative plaintiffs' trial plan, and had nothing to say about judicial abstention to the FDA in a false advertising lawsuit.

9

1   not germane to this dispute and cannot be a reason to dismiss any of Plaintiffs'
2   claims. *Cel-Tech* does not apply to consumer injuries. Moreover, no legislature or
3   regulatory agency has ever expressly allowed the conduct forming the basis for
4   Plaintiffs' claims against Unilever.

5       For one, *Cel-Tech* applies only to actions between competitors, not
6   consumer false advertising cases such as the instant one. *See Smith v. State Farm*
7   *Mutual Auto. Ins. Co.*, 93 Cal. App. 4th 700, 720 n.23 (2001) ("As the [California
8   Supreme Court] itself acknowledged, we are not to read *Cel-Tech* as suggesting
9   that such a restrictive definition of 'unfair' should be applied in the case of an
10  alleged *consumer* injury."). This is a consumer case, not a case between
11  competitors. *Cel-Tech* does not apply.

12      Moreover, as discussed, the FDA has nowhere expressly allowed the
13  conduct underlying Plaintiffs' claims. That is, the FDA has not authorized
14  Unilever's (1) misleading representations of trans fat content on its margarine
15  products; (2) misleading comparisons to butter; (3) misleading "no cholesterol"
16  claims; (4) false "natural" claims; (5) misleading implied health claims; or (6)
17  misleading "nutritious oils" claims. To put it simply, Unilever attempts to shelter a
18  whole panoply of conduct undertaken in advertising its margarines behind a single
19  FDA regulation concerning designation of trans fat content within the required
20  "Nutrition Facts" box. This stretches the regulation past the breaking point,
21  ignoring the FDA's express prohibition of "false or misleading" expressions of
22  nutrient levels outside the "Nutrition Facts box," 21 C.F.R. § 101.13(i)(3), as well
23  as the express language of the NLEA authorizing state-law regulation in the area of
24  food labeling.   Even if *Cel-Tech* could apply to a consumer case such as this one,
25  its holding is entirely distinguishable because no statute or regulatory agency has
26  ***expressly*** approved the conduct of which Plaintiffs complaint.

27
28

10

## VI.   Unilever's "Truth" and "Puffery" Defenses Fail.

Unilever argues its label claims are either true or non-actionable puffery. Def's Memo at 10-15. These arguments fail. First, disputing these statements because they are supposedly true and submitting evidence to verify their truth is inappropriate on a motion to dismiss. Second, even if they are true, the UCL, FAL, CLRA, and Lanham Act prohibit statements that are misleading, regardless of their truth. Finally, the challenged statements are all specific factual claims that do not qualify for the puffery defense.

### A. Arguments That Allegedly False Statements Are True Are Inappropriate on a Motion to Dismiss.

Unilever asks the Court to dismiss Plaintiffs' claims on the grounds that "[Plaintiffs] attack statements that are true." Def's Memo at 14. However, the "truth" of such statements is "a question of fact, and therefore inappropriate for resolution at the motion to dismiss stage." *Gonero v. Union Pac. R.R. Co.,* 2009 U.S. Dist. LEXIS 100962 at *28 (E.D. Cal. Oct. 16, 2009).

### B. "True But Misleading" Statements are Actionable Under the UCL, FAL, CLRA, and Lanham Act.

Unilever states its margarine product labels "are true and cannot be actionable as 'false' advertising." Def's Memo at 12. This is wrong, as the FAL makes unlawful:

> not only advertising which is false, but advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

*Franklin Fueling Sys. v. Veder-Root Co.,* 2009 U.S. Dist. LEXIS 72953 at *21-22 (E.D. Cal. Aug. 11, 2009). Likewise, "A *perfectly true* statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Morgan v.*

11

1  *AT&T Wireless Services, Inc.,* 177 Cal. App. 4th 1235, 1255 (2009) (emphasis
2  added).

3  The Lanham Act standard is the same. "Even if an advertisement is not
4  literally false, relief is available under Lanham Act §43(a) if it can be shown that
5  the advertisement has misled, confused, or deceived the consuming public."
6  *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1140 (9th Cir. 1997).

7  Plaintiffs have met the standard for alleging "true, but misleading"
8  advertising.

9  **C. Unilever's Puffery Defense Fails Because the Defense Does Not Apply to**
10  **Specific Factual Claims.**

11  Puffery is "described as 'involving outrageous generalized statements, not
12  making specific claims, that are so exaggerated as to preclude reliance by
13  consumers.'" *Franklin Fueling Sys. v. Veder-Root Co.,* 2009 U.S. Dist. LEXIS
14  72953 at *14 (E.D. Cal. Aug. 11, 2009) (quoting *Cook, Perkiss, & Liehe, Inc., v. N.*
15  *Cal. Collection Service,* 911 F.2d 242, 246 (9th Cir. 1990). "Conversely,
16  'misdescriptions of specific or absolute characteristics of a product are
17  actionable.'" *Id.* A statement is considered puffery only if such a statement is
18  "extremely unlikely to induce consumer reliance." *See Newcal Indus. v. Ikon*
19  *Office Solutions,* 513 F.3d 1038, 1053 (9th Cir. 2008).

20  **1.  Unilever's "Nutritious Oils" Claims Cannot Be Defended As Puffery.**

21  Actionable representations are statements concerning a "specific and
22  measurable" attribute of a product. *Coastal Abstract Service v. First Am. Title Ins.*
23  *Co.,* 173 F.3d 725, 730 (9th Cir. 1999). Unilever's "made with a blend of nutritious
24  oils" claim is quantifiable, specific, and misleading. Further, "context is important"
25  in evaluating statements as puffery or actionable assertions. *Fraker,* 2006 U.S.
26  Dist. LEXIS 79049 at *10 (S.D. Cal. Oct. 19, 2006). As Unilever even admits, its

27
28

12

"blend of nutritious oils" claim "is not some abstract statement."[6] This specific statement, however, is both false and misleading. It is false because the "blend" of oils in Unilever margarines includes partially hydrogenated vegetable oil, a form of artificial trans fat.[7] And it is misleading because small amounts of ALA-containing oils have never been shown to mitigate the grave harm to health caused by artificial trans fat.

Unilever cites to *Tylka v. Gerber Prods. Co.*[8] for examples of claims ruled puffery, specifically (1) "optimum nutrition," (2) "nutritionally, you can't buy a better food than Gerber," and (3) "most wholesome nutritious safe foods you can buy anywhere in the world." Def's Memo at 14-15. The analogy fails, however, given the extreme vagueness of these statements, which do not even refer to a particular product:

> In fact, virtually all of the advertisements or statements that Gerber disseminated to the public refer to Gerber's baby products on a whole. As such, Gerber's advertisements that are at issue do not address the market for an individual product, but rather, they address baby food generally (e.g., "most nutritious") throughout the United States and even the world. Liability cannot follow for such vague, all encompassing, communications. 1999 U.S. Dist. LEXIS 10718 (N.D. Ill. June 29, 1999) at *26-27 (internal citation omitted).

Unilever's "made with a blend of nutritious oils" claim does not address "margarine generally," but rather the specific margarines inside their respective packaging.

---

[6] Def's Memo at 11.
[7] Compl. at ¶¶63, 70.
[8] 1999 U.S. Dist. LEXIS 10718 (N.D. Ill. June 29, 1999).

13

1   Unilever further errs when it cites to *Williams v. Gerber Prods. Co.* to

2   support its claim that "just one of a variety of **nutritious** Gerber Graduates foods

3   and juices that have been specifically designed to help toddlers grow up strong and

4   healthy" classifies as non-actionable puffery. Def's Memo at 14. In fact, the

5   *Williams* court held:

6   　　Further, the statement that Fruit Juice Snacks was made with 'fruit

7   　　juice and other all natural ingredients' could easily be interpreted by

8   　　consumers as a claim that all the ingredients in the product were

9   　　natural, which appears to be false. And finally, the claim that Snacks

10   　　is "just one of a variety of nutritious Gerber Graduates foods and

11   　　juices that have been specifically designed to help toddlers grow up

12   　　strong and healthy" ***adds to the potential deception***.

13   552 F.3d 934, 939 (9th Cir. 2008) (emphasis added). The instant case is nearly

14   identical: Unilever states on its product labels they are "0g Trans Fat," which is

15   "false," and then includes "made with a blend of nutritious oils," and an image of a

16   red heart, which "adds to the potential deception" that its margarines are healthy

17   and free of trans fat.

18   　　**2.  Unilever's Comparisons to Butter Are Not Puffery.**

19   　　Unilever's misleading comparisons to butter are also actionable. "[B]ecause

20   a numerical comparison gives the impression that the claim is based upon

21   independent testing," such a comparison is actionable. *TYR Sport Inc. v. Warnaco*

22   *Swimwear, Inc.,* 2009 U.S. Dist. LEXIS 66118 at *31 (C.D. Cal. May 27, 2009)

23   (quoting *Southland Sod Farms,* 108 F.3d at 1145). For example, in *Southland Sod*

24   *Farms* the court found a claim that one type of turfgrass seed required "50% less

25   mowing" than another seed was found actionable non-puffery. 108 F.3d at 1145.

26   By the same standard, Unilever's misleading and deceptive representations must be

27

28

1   actionable: they make finite claims that, though relative and possibly true, are used

2   in a deceptive manner.

3           The comparison charts also state the respective margarine product's trans fat

4   as "0g." It is impossible for a product to be "0g trans fat" when it contains partially

5   hydrogenated vegetable oil. As the complaint alleges, the purpose of such

6   misleading numerical comparisons in the context of Unilever's margarine product

7   labeling is clear: to persuade health-conscious butter purchasers into purchasing

8   margarine despite the risk it poses to human health.[9]

9           **3.   21 C.F.R. § 101.13(J) Does Not Shield Unilever From Liability For**
           **Their Misleading Comparisons To Butter.**
10

11          Unilever states its comparisons to butter are "relative" claims, and as such

12  are "perfectly permissible" and thus non-actionable. Def's Memo at 15. This

13  argument also fails. Though 21 C.F.R. § 101.13(j) does allow relative claims that

14  use such phrases as "light," "less," or "more," such statements are allowed only so

15  long as these labeling claims ***"will not cause consumer confusion when***

16  ***compared."*** 21 C.F.R. § 101.13(j)(ii)(B). As Plaintiffs allege in the complaint at ¶¶

17  3, 65-6, 72-3, 78-9, 83-4, 87, 91, 95, Unilever's labeling practices present

18  information in a manner that causes consumer confusion about the relative

19  nutritional properties of butter and Unilever margarines.

20  **VII.   Plaintiffs' Claims Grounded in Fraud Satisfy Rule 9(b)'s Pleading**
        **Standard.**
21      **A. Plaintiffs Are Not Required to Plead Reliance.**

22          Unilever notes, correctly, that the Ninth Circuit has held that although

23  California's state courts do not require claims under the FAL or the "fraudulent

24  prong" of the UCL to be pled with particularity,[10] Rule 9(b) imposes such burden

25

26  _____

    [9] *See, e.g.,* Compl. at ¶68.
27  [10] *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 47 (1998).
28                                          15

1   in federal court when the claims "sound in fraud." *Kearns v. Ford Motor Co*., 567

2   F.3d 1120, 1145 (9th Cir. 2009). Unilever then wrongly construes this holding to

3   mean UCL plaintiffs in federal court must plead all of the *substantive* elements of

4   common law fraud, and with particularity.

5        For instance, Unilever complains Plaintiffs do not specify "which products

6   labels or advertisements they saw or relied on in making their purchases." Def.'s

7   Memo at 16. Reliance, however, is not an element of UCL and FAL claims.

8   "Allegations of actual deception, reasonable reliance, and damage are

9   unnecessary." *People v. Orange Co. Charitable Services*, 73 Cal. App. 4th 1054,

10  1076 (1999), *rev. denied* 1999 Cal. LEXIS 6981 (1999). See also *Annunziato v.*

11  *eMachines, Inc*., 402 F. Supp. 2d 1133, 1137-38 (C.D. Cal. 2005).[11]

12       **B. Plaintiffs Adequately Describe Unilever's Deceptive Claims.**

13       Unilever also claims Plaintiffs, like the plaintiff in *Kearns*, failed to allege

14  the "who, what, when, where and how." This is absurd. In *Kearns*, the plaintiff

15  failed to "specify what the television advertisements or other sales material

16  specifically stated." *Kearns*, 567 F.3d at 1126. Here, not only do Plaintiffs specify

17  the exact wording of each deceptive statement, but they include images of each

18  claim on the product, and describe in detail why each statement is deceptive. *See*

19  Compl. ¶¶62-97.

20       **C. Plaintiffs Adequately State Claims for Fraudulent Omissions.**

21       Oddly enough, while claiming Plaintiffs do not adequately allege actionable

22  omissions, Unilever cites standards Plaintiffs clearly have met. For example,

23  ─────────────────────

24  [11]     "The goal of both the UCL and the FAL is the protection of consumers.
25  However, the Court can envision numerous situations in which the addition of a
    reliance requirement would foreclose the opportunity of many consumers to sue
26  under the UCL and the FAL. [...] A construction of these statutes that reduced
    them to common law fraud would not only be redundant, but would eviscerate any
27  purpose that the UCL and the FAL have independent of common law fraud."

16

28

Unilever notes omissions are actionable "when the defendant makes partial representations but suppresses some material fact." Def's Memo at 17, quoting *Alfaro v. Cmty. Hous. Improvement Sys.*, 171 Cal App. 4th 1356, 1382 (2009). Unilever also notes Plaintiffs needed to name the "statement by Unilever from which an affirmative duty to disclose could arise." Def's Memo at 18. Plaintiffs do this. See, e.g., compl. at ¶¶ 62, 65, 67, 72, 76, 78, 82, 83, and 87.

## VIII.  Plaintiffs Are Entitled to Injunctive Relief.

### A. Unilever Inappropriately Introduces Evidence Outside the Scope of the Complaint.

Unilever inappropriately introduces its own statements in a press release to show that at some point in "early 2010" it will comply with the order Plaintiffs seek. To circumvent the well-known proscription on disputing facts in the complaint in a motion to dismiss, Unilever twists the language of *Parrino v. FHP, Inc.*, stating "[t]his Court may properly consider the press release... because the *issue* had been incorporated in the complaint." Def's Memo at 18-19 (emphasis added). However, *Parrino* actually held that "a district court on a motion to dismiss the court may only consider documents whose contents *are alleged in a complaint* and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." 146 F.3d 699, 705 (9th Cir. 1998) (emphasis added and internal citation omitted). The Complaint makes no reference to Unilever's press release, and accordingly the court cannot take judicial notice of it.[12]

---

[12]     Unilever also argues for admitting evidence outside the complaint and dismissing on this basis by citing to *Caro v. Procter & Gamble,* 18 Cal. App. 4th 644 (1993), falsely claiming the citation shows "The  trial court dismissed, and the appellate court affirmed." Def's Memo at 19. In fact, in the citation neither court dismissed the action, and instead the appellate court affirmed the trial court's denial of class certification because the proponents of certification failed to meet their

17

**B. Even If the Court Were to Accept Unilever's Argument, the Statements Made in the Press Release Have Not Yet Occurred, and Further Only Apply to Unilever's "Soft Spreads Portfolio."**

As it happens, even if the Court were to take notice of Unilever's self-serving press release, the document does not claim Unilever has *already* removed partially hydrogenated vegetable oils from all of its margarine products. Instead, Unilever merely announced its "entire soft (tub) spreads portfolio in the United States will have no partially hydrogenated oils... by the second quarter of 2010."[13] No mention is made of removing partially hydrogenated oils from Unilever's stick margarines, which are also subjects of the complaint.[14]

Additionally, this case factually differs from *Wright v. General Mills* in two key respects. 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009). First, in *Wright* it was "undisputed" that "at the time plaintiff filed her complaint defendant's products no longer contained [high fructose corn syrup]." 2009 WL 3247148 at *6. Second, the *Wright* plaintiff's claim for injunctive relief failed to allege that the defendant's "offending practice is likely to recur," and in fact had conceded just the opposite. *Id.* Neither issue applies, as here Plaintiffs make no such concession and allege Unilever's offending practices are ongoing.

**IX.   Plaintiffs Do Not Have a "CLRA Damages Claim" For the Court to Strike.**

Unilever asks the Court to "strike the CLRA damage claim without leave to amend." Def's Memo at 20. This appears to be an error, as Plaintiffs nowhere seek

---

evidentiary burden of showing a substantial benefit to the class because, *inter alia*, the challenged product label was no longer used.

[13]   Also, the press release notes that after the reformulations their tub margarines will have "no partially hydrogenated oils and *therefore no trans fat per serving*," showing the misleading nature of Unilever's claim on its labels that they contain "no trans fat" and "0g trans fat."

[14]   *See* Compl. at ¶¶ 76-81, 87-89, 95-97.

18

1  damages for violations of the CLRA, neither in their "Fourth Cause of Action"
2  describing their CLRA claim nor in their prayer for relief, where Plaintiffs limit
3  their prayer to restitution and injunctive relief. There is no "CLRA Damages
4  Claim" for the Court to strike, much less "with prejudice."

5      Unilever perhaps means to ask the Court to strike the request for restitution.
6  However, while the CLRA has subheadings separately authorizing actions for
7  damages and punitive damages[15] and restitution,[16] the 30-day notice requirement
8  specifically only applies to "an action for damages pursuant to this title." Civ.
9  Code 1782(a). Plaintiffs finally note that while they have not yet sought damages,
10 they are now entitled to do so as "the consumer may amend his or her complaint
11 without leave of court to include a request for damages" 30 days after commencing
12 an action seeking injunctive relief if the defendant has not agreed to the demands
13 in the notice letter. Civ. Code 1782(d).

14 **X.    Conclusion**

15     For all of the foregoing reasons, Unilever United States Inc.'s Motion to
16 Dismiss should be denied.

17 Dated: January 8, 2010                    Respectfully Submitted,

18                                           s/Gregory S. Weston
19                                           GREGORY S. WESTON
                                             THE WESTON FIRM
20                                           888 Turquoise Street
                                             San Diego, CA 92109
21                                           Telephone:  858 488 1672
22                                           Facsimile:   480 247 4553
                                             greg@westonfirm.com
23

24

25

26 _____
   [15] Civ. Code 1780(a)(1) and (4).
27 [16] Civ. Code 1780(a)(3).

                                    19
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JARED H. BECK
BECK & LEE BUSINESS TRIAL
LAWYERS
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:   305 789 0072
Facsimile:    786 664 3334
jared@beckandlee.com

<u>Counsel for Plaintiffs</u>

*Red et al. v. Unilever PLC et al., Case No. 2:09-cv-07855 MMM AGRx*
PLAINTIFFS' OPPOSITION TO UNILEVER UNITED STATES INC.'S
MOTION TO DISMISS