WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
JANELLE J. SAHOURIA (CA SBN 253699)
JSahouria@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
UNILEVER UNITED STATES, INC. and
UNILEVER PLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EVANGELINE RED, JENNIFER RED, and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC. and UNILEVER PLC,<br><br>Defendants. | Case No. CV09 07855 MMM (AGRx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT UNILEVER UNITED STATES, INC.'S MOTION TO DISMISS**<br><br>Hearing Date: February 8, 2010<br>Time:   10:00 a.m.<br>Courtroom:  780<br>Judge:  Hon. Margaret M. Morrow<br>Action Filed:  October 28, 2009 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENTS IN REPLY .......................................................................... 1

    A. Plaintiffs' TFA-Based Claims Are Expressly Preempted. ................. 1

    B. The Court Should Abstain in Deference to the FDA. ........................ 7

    C. *Cel-Tech* Bars Plaintiffs' Sections 17200 and 17500 Claims. ................................................................................................ 8

    D. Unilever's Product Claims—"Nutritious Oils," "Cholesterol Free," and "70% Less Saturated Fat Than Butter"—Are True. ................................................................................ 9

    E. Plaintiffs' Affirmative Misrepresentation Claims—"Made With A Blend of Nutritious Oils" and Comparisons to Butter—Refer to Non-Actionable Puffery. ............................................................................................. 10

    F. Plaintiffs Have Not Pled Their Claims with the Requisite Particularity. ..................................................................................... 12

    G. Plaintiffs Are Not Entitled to Injunctive Relief. .............................. 13

    H. The Court Should Strike Plaintiffs' CLRA Damage Claim. ........................................................................................... 14

III. CONCLUSION.......................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
 __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................9, 14

*Cmty. Assisting Recovery, Inc. v. Aegis Sec. Ins. Co.*,
 92 Cal. App. 4th 886, 112 Cal. Rptr. 2d 304 (2001) ............................................8

*Diaz v. Kay-Dix Ranch*,
 9 Cal. App. 3d 588, 88 Cal. Rptr. 443 (1970) ..................................................7, 8

*Farm Raised Salmon Cases*,
 42 Cal. 4th 1077 (2008), *cert. denied sub nom. Albertson's, Inc. v. Kanter*,
 129 S. Ct. 896, 173 L. Ed. 2d 106 (2009)..............................................................5

*Fraker v. KFC Corp.*,
 No. 06-CV-01284-JM (WMC), 2007 WL 1296571
 (S.D. Cal. Apr. 30, 2007)........................................................................................5

*Gonero v. Union Pac. R.R. Co.*,
 No. 2:09-2009 WBS JFM, 2009 U.S. Dist. LEXIS 100962
 (E.D. Cal. Oct. 16, 2009) ......................................................................................10

*In re Paxil Litig.*,
 218 F.R.D. 242 (C.D. Cal. 2003)............................................................................8

*In re Tobacco II Cases*,
 46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009) ......................................................12

*Lockwood v. Conagra Foods, Inc.*,
 597 F. Supp. 2d 1028, 2009 U.S. Dist. LEXIS 10064 (N.D. Cal. 2009) .............5

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*,
 556 F.3d 114 (2d Cir. 2009) ...................................................................................5

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
 179 Cal. App. 4th 36, 101 Cal. Rptr. 3d 323 (2009) ..........................................12

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
 160 Cal. App. 4th 638, 72 Cal. Rptr. 3d 903 (2008) ............................................8

*Rubio v. Capital One Bank (USA), N.A.*,
  572 F. Supp. 2d 1157 (C.D. Cal. 2008) ............................................................... 8

*Tylka v. Gerber Prods. Co.*,
  No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .............................. 11

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................ 9, 10, 11

*Wright v. General Mills, Inc.*,
  No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)
  (Lorenz, J.) ......................................................................................................... 13

**STATUTES, REGULATIONS, & RULES**

21 U.S.C.
  § 343(q) ............................................................................................................ 2, 5
  § 343 note .............................................................................................................. 4
  § 343-1(a)(3) ......................................................................................................... 1
  § 343-1(a)(5) ..................................................................................................... 2, 5

21 C.F.R.
  § 101.13(i)(3) .................................................................................................. 2, 4, 5

58 Fed. Reg. 44020 (Aug. 18, 1993) ........................................................................ 3

68 Fed. Reg. 41434 (July 11, 2003) ......................................................................... 8

72 Fed. Reg. 66103 (Nov. 27, 2007)) ....................................................................... 9

Fed. R. Civ. P.
  12(b)(6) ................................................................................................................. 1
  23(b)(2) ................................................................................................................. 8

**OTHER AUTHORITIES**

1 James T. O'Reilly, *Food and Drug Administration* § 10.34 (3d ed. 2009) ............ 4

*In re Ole' Mexican Foods*, letter dated Nov. 6, 2007, *available at*
  http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2007/uc
  m076568.htm (last visited Jan. 22, 2010) ............................................................ 4

## I. INTRODUCTION

Plaintiffs do not disagree that the Court should first decide Unilever's motion to dismiss or stay under the first-to-file rule (Dkt. 8). Nor do they disagree that if that motion is granted, it would moot this one. But if the Court were to deny its "first-to-file" motion, Unilever respectfully requests that the Court grant this motion to dismiss under Fed. R. Civ. P. 12(b)(6).

First, the gravamen of the Complaint is that Unilever's labels do not disclose the precise levels of trans fatty acids even though those levels are less than half a gram, the threshold level below which the FDA has required that a manufacturer "shall" disclose such trace amounts as "zero grams." All of Plaintiffs' TFA-based claims are preempted, or if not, the Court should equitably abstain from entertaining claims that seek, as here, to "second-guess" the FDA.

Second, a number of the claims alleged to be actionable are true on their face, or are non-actionable puffery.

Third, Plaintiffs have not alleged their claims with the requisite particularity.

Fourth, the Court should strike Plaintiffs' injunctive relief prayer, because they cannot allege that injunctive relief is necessary. Three months before they sued, Unilever began voluntarily reducing the levels of TFAs in all of its vegetable oil spreads.

Finally, the Court should strike Plaintiffs' allegations seeking damages under the Consumer Legal Remedies Act.

The Court should dismiss the Complaint under Rule 12(b)(6), with prejudice.

## II. ARGUMENTS IN REPLY

### A. Plaintiffs' TFA-Based Claims Are Expressly Preempted.

In its Opening Memorandum ("Open. Mem."), pages 4 to 8, Unilever showed that to the extent Plaintiffs are attacking Unilever's product labels concerning the levels of trans fatty acids ("TFAs") that are below the FDA's "half a gram" threshold, those claims are expressly preempted by 21 U.S.C. § 343-1(a)(3).

Unilever attached a table showing which averments would be affected if the Court were to agree those claims are preempted. (*See* Open. Mem., App. A [Dkt. 11-2].)

Plaintiffs disagree. Their principal argument is that express FDA preemption applies only to what is said "inside" the label's "Nutrition Facts" box, not outside the box. (Plaintiffs' Opposition ("Opp.") [Dkt. 23], 2:10-7:2.) They are wrong.

Plaintiffs admit that the standard is high: No state may "directly or indirectly establish ... any requirement for the labeling of food that is not identical to the requirement of section 403(q) [21 U.S.C. § 343(q)]." (Opp., 3:7-11.) Plaintiffs also admit that these same claims concerning information *inside* the "Nutrition Facts" box would be preempted. (*Id.*, 5:10-13.) Their argument is that they do not directly attack anything that is said *inside* the "Nutrition Facts" box, and that preemption does not extend to claims that lie outside the box. That argument is wrong as a matter of law and logic.

<u>First</u>, Plaintiffs characterize a "0 g trans fat" claim that is made outside the "Nutrition Facts" box as a "nutrient content claim" and, as such, "any analysis of preemption must travel under the preemption language in 21 U.S.C. § 343-1(a)(5)." (Opp., 3 n.1.) That admission is correct, and so too is Plaintiffs' conclusion that section 343-1(a)(5) governs preemption as to "nutrient content claims." But after that, their analysis runs aground.

Section 343-1(a)(5) prohibits states from establishing "any requirement respecting any [nutrient content claim] … that is not identical to the requirement of section 403(r)." The "requirement of section 403(r)" that governs the "0 g trans fat" claim says that a label may contain a statement about the amount of a nutrient if "[t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat') …." 21 C.F.R. § 101.13(i)(3). The FDA regulations, however, are silent as to what claims might be "false or misleading" in this respect.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS  
CASE NO. CV09 07855 MMM (AGRx)  
sf- 27882555

2

1  But clearly, a claim outside the "Nutrition Facts" box that is *inconsistent* with
2  information inside the box would be "misleading."

3  Plaintiffs' contention is just the opposite, that Unilever's labels contain trans
4  fat information *outside* the "Nutrition Facts" box *that is perfectly consistent with* a
5  disclosure made inside the box, yet this information is false or misleading.  Plain-
6  tiffs, in effect, substitute their judgment for the FDA's in deciding what information
7  about trans fat needs to be disclosed on a food label.  As a result, Plaintiffs would
8  *require* that trans fat information outside the Nutrition Facts box *must be*
9  *inconsistent* with the information inside the box.  But this would result in an
10  obviously misleading label.

11  When the FDA promulgated its nutrition labeling regulations, it recognized
12  the need for "nutrient content" claims to be consistent with the "Nutrition Facts"
13  box.  For example, the FDA's original rule governing the "nutrient content" claim
14  "free" permitted a product to qualify for this claim by being "free" of a nutrient per
15  "reference amount customarily consumed" (the FDA's generic serving size) but *not*
16  per actual labeled serving.  This had the effect of permitting some products with
17  large-labeled serving sizes to bear the nutrient content claim "calorie free" even
18  though, in the "Nutrition Facts" box, they were required to declare a level of
19  calories above zero.  In correcting this problem, the FDA said that, "to pre[v]ent
20  misleading and confusing labeling when 'free' is used," it would change the criteria
21  for "free" to require the claim to be based on the actual labeled serving size.
22  58 Fed. Reg. 44020, 44025 cmt. 11 (Aug. 18, 1993).  This is an authoritative
23  statement of FDA policy and demonstrates that the FDA considers label claims that
24  are inconsistent with the "Nutrition Facts" box to be "misleading."

25  Indeed, the FDA has taken enforcement action based on this principle.  For
26  example, the FDA sent a warning letter to a food manufacturer that, among other
27  things, made claims outside the "Nutrition Facts" box that were *different* from
28

information inside the box. *In re Ole' Mexican Foods*, letter dated Nov. 6, 2007.[1] To the best of our knowledge, the FDA has not taken reported enforcement action based on a purported failure to disclose nutrient levels that are not required to be disclosed in the Nutrition Facts box.

Both Congress and the FDA consider it important for labels to be internally consistent. Section 3(b)(1)(A)(iv) of the Nutrition Labeling and Education Act provides that the mandated regulations "shall permit statements describing the amount and percentage of nutrients in food which … are consistent with the terms defined in section 403(r)(2)(A)(i) of such Act." 21 U.S.C. § 343 note (Regulations for implementation of labeling requirements). According to a leading treatise:

> If statements of the amount and percentage of nutrients were not subject to section 403(r)(1)(a) of the act, there presumably would have been no need for Congress to express its desire that such claims be permitted by the regulations. Accordingly, FDA concludes that section 403(r)(1)(a) of the act and therefore these final regulations apply to statements of the amount of a nutrient in food as well as to statements of the level of a nutrient in food.

1 James T. O'Reilly, *Food and Drug Administration* § 10.34 (3d ed. 2009) (*citing* 58 Fed. Reg. 2302-01 (1993)).[2]

Second, Plaintiffs' interpretation would promote confusion—exactly what the FDA regulation forbids. *Cf.* 21 C.F.R. § 101.13(i)(3). For a state to require a manufacturer to declare a product's actual level of TFAs in claims made *outside* the "Nutrition Facts" box—for example, "contains 0.44 g trans fat per serving"—while federal rules require the manufacturer to declare "0 g" *inside* the box would be "misleading" and very confusing to consumers. The two claims would be incon-

---

[1] A copy of the letter can be found on the FDA's website at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2007/ucm076568.htm (last visited Jan. 22, 2010).

[2] This quotation also shows that Congress and the FDA consider claims about the level of nutrients in a food to be "nutrient content" claims under section 403(r)(1), and therefore subject to preemption.

sistent. Thus, a manufacturer's "0.44 g" claim would be prohibited by 21 C.F.R. § 101.13(i)(3), and consequently, any state action that sought to require such a disclosure would be preempted under section 343-1(a)(5). Yet, that is the outcome Plaintiffs want this Court to reach.[3]

Plaintiffs' cited cases are not to the contrary. *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 2009 U.S. Dist. LEXIS 10064 (N.D. Cal. 2009), was not a "TFA" labeling case, as Plaintiffs acknowledge. (*See* Opp., 4:20-5:4.) Rather, it was an "all natural" claim. Unlike TFA claims, for which the FDA has promulgated specific content regulations (*see* 21 C.F.R. § 101.13(i)(3)), there is no specific FDA regulation governing "natural" claims.[4] Hence, no express preemption.

Third, as noted in the Opening Memorandum, in distinguishing the TFA-based claims in *Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007), as preempted—as opposed to the "artificial food coloring" claims presented in the case before it—the California Supreme Court implicitly recognized the special preemption afforded TFA-based claims. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1097 (2008) (noting that the *Fraker* court properly dismissed the TFA-based claims in that case as "impermissibly

---

[3] As explained in the Opening Memorandum, even claims on product labeling and advertisements that do not explicitly mention TFAs are "TFA-based" claims that should be preempted given Plaintiffs' contention that those claims are false and misleading when made in conjunction with Unilever's failure to disclose TFA levels below the FDA's half-a-gram threshold.

[4] Plaintiffs' citations to menu-labeling cases involving restaurants (Opp., 3 n.1) are also off point. Restaurants are exempted from the requirements of § 343(q)—they do not have to attach a "Nutrition Facts" panel to foods they serve—and because this exemption is again referenced in the preemption provision (§ 343-1(a)), state law claims against restaurants are not preempted by the NLEA. *See N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 120 (2d Cir. 2009) (city regulation requiring certain restaurants to post calorie content information on menus and menu boards is not preempted).

founded on violations of the FDCA and ... thus preempted by section 337"), *cert. denied sub nom. Albertson's, Inc. v. Kanter*, 129 S. Ct. 896, 173 L. Ed. 2d 106 (2009).

Plaintiffs' two-part rejoinder is to ignore that part of *Farm Raised Salmon* which disagrees with their hypothesis and to insist that *Fraker* was not a case in which the alleged misrepresentations "concerned trans fat." (*See* Opp., 7 n.3.) As to the first comment, silence in the face of contrary authority only highlights the omission. As for the second, it is hard to understand. Even Plaintiffs characterize *Fraker* as a case in which the plaintiff alleged that the defendant "made misleading representations about the quality of its food *while its products were high in trans fat ....*" (*Cf.* Opp., 7:7-9 (emphasis added).) As Unilever said in its Opening Memorandum, page 7:22-23, Plaintiffs' claims in this case "are indistinguishable from the TFA claims alleged in *Fraker*."

Fourth, Plaintiffs' argument is illogical and not commercially practicable. They are asking to sue over a statement *outside* the box that says "0g trans fats" on the theory it is "false and misleading," when just inches away *inside* the "Nutrition Facts" box, the label states "Trans Fat 0g"[5]—the identical words, transposed, which they admit the FDA has studied, approved, and rendered immune from suit because manufacturers are *required* to list as "zero" any trace levels of TFAs that fall below half a gram.

Plaintiffs declaim that "[i]t is impossible for a product to be '0 g trans fat' when it contains partially hydrogenated vegetable oil." (Opp., 15:4-5.) But that quarrel is with the FDA, which has specifically regulated in this area.

---

[5] To view the label for "I Can't Believe It's Not Butter!," *see* Unilever's Request for Judicial Notice ("RJN"), Exs. D and E [Dkt. 14-5 and -6]. For the other product labels, *see* RJN, Exs. F to I [Dkt. 14-7 to 14-10].

Plaintiffs' last statement illustrates more eloquently than anything Unilever might have said why these claims seek to trample on the FDA's prerogative. Plaintiffs are asking this Court to go where no court has gone before. They want to become "private Surgeons General" and sue a food manufacturer over statements made on a product label about TFA levels even though the statements are *consistent* with what the FDA has carefully studied—and mandated, and in doing so Plaintiffs would impose new labeling requirements that are *inconsistent* with those the FDA has mandated.

The Court should dismiss with prejudice as expressly preempted all of Plaintiffs' TFA-based claims.[6]

### B. The Court Should Abstain in Deference to the FDA.

In the alternative, Unilever has asked the Court to abstain. (Open. Mem., 8:20-10:3.) Plaintiffs oppose, saying this is really a disguised preemption claim, and repeat their no-preemption argument. (Opp., 8:7-9:16.) They are wrong.

Courts in these circumstances often abstain on equitable grounds even if a claim is not preempted. In *Diaz v. Kay-Dix Ranch*, 9 Cal. App. 3d 588, 88 Cal. Rptr. 443 (1970), the plaintiffs were legal aliens who sought an injunction against three California ranch owners to stop them from employing illegal aliens as farm workers, conduct they alleged to violate section 17200. They alleged that the Immigration and Naturalization Service ("INS") was not doing its job of halting the influx of illegal aliens who would come here and agree to work for low wages. The court, while recognizing the farm workers' need for protection, denied injunctive relief on the basis that federal action through the authority of the INS would be more efficacious than injunctive relief. "Plaintiffs seek the aid of equity because

---

[6] For a list of those expressly preempted claims and the specific paragraphs of the Complaint that are affected, *see* Open. Mem., App. A [second, third, and fifth columns].

the national government has breached the commitment implied by national ... policy.  It is more orderly, more effectual, less burdensome to the affected interests, that the national government redeem its commitment.  Thus the court of equity withholds its aid." *Diaz*, 9 Cal. App. 3d at 599.

Plaintiffs do not dispute that the FDA is still investigating whether to further regulate label declarations of TFAs.  Nor do they dispute the finding in the FDA's final report noting that while TFAs "may raise blood cholesterol levels," "saturated fats"—such as butter—may be worse.  *See* 68 Fed. Reg. 41434, 41442 (July 11, 2003) (attached at RJN, Ex. M [Dkt. 14-14]).

That FDA report shows there are no simple answers.  Allowing Plaintiffs to "regulate" in an area in which the FDA has chosen not to tread would be a mistake.  As Judge Pfaelzer noted in a similar context, plaintiffs should not be allowed to "use the Court as a forum to challenge and to second-guess" a decision of the FDA.  *In re Paxil Litig.*, 218 F.R.D. 242, 248 (C.D. Cal. 2003).[7]

Even if these claims are not preempted, the Court should abstain.

### C. *Cel-Tech* Bars Plaintiffs' Sections 17200 and 17500 Claims.

Plaintiffs say categorically that the "*Cel-Tech*" safe harbor does not apply in consumer cases. (Opp., 10:5-11.)  They are wrong.  Plenty of cases apply the "safe-harbor" defense to consumer claims.  *See, e.g., Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (bank credit card customers); *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 644-46, 72 Cal. Rptr. 3d 903 (2008) (mortgage borrowers); *Cmty. Assisting Recovery,*

---

[7] That Judge Pfaelzer was speaking of class certification and not a motion to dismiss in no way diminishes the observation.  (*Cf.* Opp., 9 n.5.)  Indeed, the result was that the court refused to certify even an injunctive-relief class under Fed. R. Civ. P. 23(b)(2).  *Paxil*, 218 F.R.D. at 248 ("Prudent exercise of that discretion requires a denial of Plaintiffs' motion to certify the Equitable Relief Class.").  Unilever is asking for nothing different; like the court in *Paxil*, this Court should decline its equity jurisdiction to host a claim that seeks to "second-guess" the FDA.

*Inc. v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886, 112 Cal. Rptr. 2d 304 (2001) (policyholders under residential insurance policies).

Plaintiffs also contend that the FDA has not permitted Unilever's conduct. (Opp., 10:12-26.) Wrong again. As noted above, the FDA requires food manufacturers to state "0 g Trans Fat" for trace amounts of TFAs below half a gram of trans fat.

Unilever's labels comply with federal law. They cannot violate state law.

### D. Unilever's Product Claims—"Nutritious Oils," "Cholesterol Free," and "70% Less Saturated Fat Than Butter"—Are True.

In its Opening Memorandum, Unilever showed why each of Plaintiffs' product-specific claims of falsity are wrong and why Unilever's product claims are true on their face. (Open. Mem., 10-14.) Plaintiffs disagree, but none of their arguments is persuasive.

To start with, Plaintiffs do not deny that the statements "Made With A Blend of Nutritious Oils," "0 mg cholesterol," "naturally cholesterol free," "heart-healthy," and "70% less saturated fat than butter" are all true. Rather, their claim is that even a truthful statement can be actionable. (Opp., 11:16-12:8.) But where, as here, "the primary evidence in a false advertising case is the advertising itself" (*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted)), the Court may decide for itself whether the statements are actionable. A court need not accept as true a plaintiff's characterization, especially where it is belied by the actual words themselves. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

Plaintiffs never address the fact that the three ICBINB! products they attack contain "Omega 3" oil (alpha-linolenic acid), which the FDA has found to be essential in the human diet. 72 Fed. Reg. 66103, 66105 & n.3 (Nov. 27, 2007) (attached at RJN, Ex. N [Dkt. 14-15]). This is just another example of how

1  Plaintiffs seek to sidestep the FDA in their quest to become "private Surgeons
2  General."
3        Moreover, these statements would be false only if the Court were to accept
4  Plaintiffs' major premise, namely, that they are false only in relation to Plaintiffs'
5  claim that Unilever fails to list the exact level of trace TFAs where the total is less
6  than .5 gram per serving. But that is the very circumstance where the FDA
7  mandates that the disclosure "*shall*" be "zero" grams.
8        Plaintiffs' other argument is that the truthfulness of a statement is a question
9  of fact and cannot be decided on a motion to dismiss. (Opp., 11:11-15.) But
10 *Williams* shows that contention to be incorrect.[8] 552 F.3d at 939.
11       This Complaint alleges either lawful conduct or perfectly true statements.
12 The Court should dismiss Plaintiffs' claims.

13     **E.    Plaintiffs' Affirmative Misrepresentation Claims—"Made With A Blend of Nutritious Oils" and Comparisons to Butter—Refer to Non-Actionable Puffery.**

15       Plaintiffs take issue with Unilever's contention that certain label statements
16 ("nutritious oils," comparing ICBINB! to butter, and the adjective "natural") are
17 non-actionable puffery. Again, they are wrong.
18       Plaintiffs' principal contention is that the term "nutritious oils" is "quantifi-
19 able" and "specific" and, therefore, cannot be puffery. (Opp., 12:21-13:6.) But
20 "nutritious" is just an adjective; it is not a factual or quantitative statement like, for
21 example, "29% faster" or "50% more." *Williams*, 552 F.3d at 939 n.3
22 ("nutritiousness can be difficult to measure concretely"). Even Plaintiffs recognize

---

[8] Plaintiffs' reliance on *Gonero v. Union Pacific Railroad Co.*, No. 2:09-2009 WBS JFM, 2009 U.S. Dist. LEXIS 100962 (E.D. Cal. Oct. 16, 2009) is misplaced. In *Gonero*, the court determined that the plaintiff adequately pled intentional infliction of emotional distress, and allowed the claim to survive the motion to dismiss stage for consideration of whether the "outrageous" prong had been satisfied. 2009 U.S. Dist. LEXIS 100962, at *28. The court never even discussed the truthfulness of that claim. *Id.*

1  this. (*See* Opp., 14:23-15:2 (citing case holding that the claim "50% less mowing"
2  is quantifiable and therefore actionable non-puffery).)

3  As Plaintiffs' own cited case shows, a quantitative statement requires some-
4  thing like a "numerical comparison [which] gives the impression that the claim is
5  based upon independent testing." (Opp., 14:14-25.) Nothing like that is present in
6  the label's adjective "nutritious." And as Unilever showed in its Opening
7  Memorandum, pages 14 to 15, numerous cases have found to the contrary, i.e., that
8  the adjective "nutritious" is mere puffery.[9]

9  Finally, Plaintiffs contend that *Williams v. Gerber* supports them. Again,
10 they are wrong. In footnote 3, the Ninth Circuit noted that "Gerber's claim that
11 Snacks is 'nutritious,' were it standing on its own, could arguably constitute
12 puffery, since nutritiousness can be difficult to measure concretely." 552 F.3d at
13 934 n.3. As it happened, in that case (unlike here) Gerber's label was misleading
14 on its face, hence the Ninth Circuit was unwilling to allow a puffery defense. Here,
15 unlike Gerber's label, Unilever's labels *do* stand on their own and are truthful, not
16 false.

17 The same is true of Plaintiffs' contention that Unilever makes misleading
18 comparisons to butter. (Opp., 15:9-19.) But Plaintiffs admit that the FDA permits
19 "relative" claims, and that this is a "relative" claim. As noted above, that claim is
20 true insofar as the FDA has itself found that "saturated fats"—read, butter—have
21 been shown to increase levels of blood cholesterol more than TFAs. (*See* RJN,
22 Ex. M [Dkt. 14-14].)

---

[9] Plaintiffs' sole rejoinder is that one of the cases finding "nutritious" to be puffery (*Tylka v. Gerber Products Co.*, No. 96 C 1647, 1999 WL 495126, at *2-3 (N.D. Ill. July 1, 1999)) involved a claim in which the statement did not target a specific product. That makes no sense. All of the cited cases involve claims attacking the adjective "nutritious" in connection with a specific product.

1  Plaintiffs' allegations attack nothing more than non-actionable puffery and
2  should be dismissed.

### F. Plaintiffs Have Not Pled Their Claims with the Requisite Particularity.

Plaintiffs admit that their claims must be pled with particularity. (Opp., 15:22-16:2.) Their quarrel is that they have pled enough. Not so.

Plaintiffs say that "[r]eliance … is not an element of UCL and FAL claims" and therefore need not be alleged. (Opp., 16:5-11.) The California Supreme Court, however, held that reliance *is* an element. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 93 Cal. Rptr. 3d 559 (2009) (the "as a result of" requirement "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"); *accord Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 42-43, 101 Cal. Rptr. 3d 323 (2009) (citation omitted) ("a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions").

Plaintiffs say it is "absurd" to think they have not alleged the "who, what, when, where, and how" of the alleged misconduct. (Opp., 16:13-19.) But they have not even come close. The Complaint simply catalogs the advertisements that Unilever *allegedly broadcast*. (Compl. ¶¶ 62-97.) Nowhere do Plaintiffs allege *which* ads *they* saw—television? print?—or *when*. Nor do they allege whether it was the ads as opposed to the product label (on which of the seven products?) on which they relied in making their purchase decisions. All they allege is that they "repeatedly purchased margarines made by Unilever ...." (Compl. ¶ 1.)

As noted in the Opening Memorandum, Plaintiffs also seek a class back to January 1, 2000, a claim that on its face presumptively includes time-barred claims,

yet Plaintiffs never allege why their ten-year-old claims would not be time-barred, or when they discovered the alleged true facts. All this they ignore.

They also ignore Unilever's citation to *Wright v. General Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) (Lorenz, J.), another "Private Surgeon General" case in which the district court in San Diego found that the plaintiff failed to meet the *Twombly* and *Iqbal* pleading standards based on allegations no worse than those alleged here. There, all the plaintiff alleged was that "[a]s a direct result of its misleading, deceptive, untrue advertising . . . Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products." 2009 WL 3247148, at *5 (citation omitted). Plaintiffs never mention *Wright*. The Court should assume they have no answer.

The Court should dismiss all claims for failure to plead with the requisite particularity.

### G. Plaintiffs Are Not Entitled to Injunctive Relief.

Plaintiffs do not dispute that before they even filed their Complaint, Unilever had already reformulated its soft spread brands to reduce their already low levels of TFAs. Rather, Plaintiffs contend that Unilever has improperly introduced evidence outside the pleadings. (Opp., 17:8-18:18.) Yet, in *Wright v. General Mills*, the complaint omitted any mention that General Mills had phased out high-fructose corn syrup prior to the complaint being filed, yet the court took judicial notice of the product labels. The court dismissed the plaintiff's claims for injunctive relief because it was "undisputed that at the time plaintiff filed her complaint defendant's products no longer contained [high-fructose corn syrup]." 2009 WL 3247148, at *5.[10]

---

[10] Plaintiffs filed a separate opposition to Unilever's request for judicial notice, which we address more particularly in our separate reply.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS         13
CASE NO. CV09 07855 MMM (AGRx)
sf- 27882555

1   Plaintiffs have failed to plead with particularity any facts showing the
2   conduct is likely to recur, as required by *Iqbal.* 129 S. Ct. at 1949-50.

3   **H.   The Court Should Strike Plaintiffs' CLRA Damage Claim.**

4   We finally come to an issue on which the parties agree. Unilever moved to
5   strike the "damages" averments of the Complaint because of Plaintiffs' untruthful
6   statement—which they do not deny making—that they "*have given* written notice
7   to Unilever of their claims." (Compl. ¶ 112 (emphasis added).) As Unilever
8   showed in its Opening Memorandum, at pages 19-20, numerous federal courts have
9   held that the 30-day letter must *precede* the complaint—not come after it.

10  Plaintiffs do not disagree. Rather, they say "[t]here is no CLRA damages
11  claim for the court to strike." (Opp., 19:3-4.) Yet, they also say that while "they
12  have not yet sought damages, they are now entitled to do so ...." (*Id.*, 19:9-13.)

13  That is exactly what they may *not* do. The Court should strike paragraph 112
14  of the Complaint without leave to amend.

15  **III.  CONCLUSION**

16  For all of the foregoing reasons, this Court should dismiss the Complaint
17  with prejudice. In the alternative, it should dismiss the CLRA damage claim and
18  require Plaintiffs to plead their claims with particularity.

Dated:      January 25, 2010          WILLIAM L. STERN
                                      JANELLE J. SAHOURIA
                                      MORRISON & FOERSTER LLP

                                      By:  /s/ William L. Stern
                                              William L. Stern

                                      Attorneys for Defendants
                                      UNILEVER UNITED STATES, INC.
                                      and UNILEVER PLC